# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| WORLDWIDE INTERACTIVE NETWORK, INC., | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No.: 3:09-CV-00121 ) Phillips/Guyton |
| CHMURA ECONOMICS & ANALYTICS, LLC, | ) ) ) |
| Defendant. | ) |

## MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

Defendant Chmura Economics & Analytics, LLC ("Chmura"), by counsel, submits this Memorandum in Support of Chmura's Motion to Dismiss this action for lack of subject matter jurisdiction and, in the alternative, for lack of personal jurisdiction.

## I.    INTRODUCTION

On March 19, 2009, Plaintiff Worldwide Interactive Network, Inc. ("WIN") filed a Complaint against Chmura under the Federal Declaratory Judgment Act seeking a declaratory judgment that Chmura's U.S. Patent No. 7,480,659 (the "659 Patent") is invalid and unenforceable and not infringed by WIN. This Court, however, lacks subject matter jurisdiction over WIN's claim because WIN has not pled *facts* showing that there is a "substantial controversy" between the parties "of sufficient immediacy and reality" to warrant the issuance of a declaratory judgment and because, in fact, no such controversy exists. Therefore, the Complaint should be dismissed for lack of subject matter jurisdiction.

Even if this Court has subject matter jurisdiction over WIN's claims, it should nonetheless dismiss the Complaint because there is no basis under Tennessee law and the due

process clause of the Fifth Amendment of the U.S. Constitution to exercise personal jurisdiction over Chmura in Tennessee with respect the claims WIN asserts in the Complaint. Since its formation, Chmura has had only limited and sporadic contacts with Tennessee, and none of those contacts gives rise to WIN's claims in this action. Accordingly, if this Court finds that is has subject matter jurisdiction over WIN's claims, it should dismiss the Complaint for lack of personal jurisdiction.

## II.  STATEMENT OF FACTS

### A.  WIN's Subject Matter Jurisdictional Allegations.

WIN filed its Complaint in this Court on March 19, 2009, the same day it claims to have "introduced to the market a software and server-based economic, education, and workforce development tool ('WIN's system')." (Compl. ¶ 7.) In the Complaint, WIN seeks, among other relief, a Declaratory Judgment that the '659 Patent is invalid, unenforceable, and not infringed by WIN. (Compl. ¶ 3.) WIN's only fact allegations directed at establishing subject matter jurisdiction are as follows:

> 8.  Upon information and belief, Chmura alleged to third parties that WIN's system infringes the '659 patent and that Chmura would bring a legal action against WIN for patent infringement in the event WIN introduced its system to the market.

> 9.  In view of Chmura's accusations of infringement of the '659 patent and its threats of legal action, WIN has a reasonable fear and apprehension that patent infringement litigation will be brought against it.

(Compl. ¶¶ 8-9.) WIN does not identify the unnamed "third parties," does not allege the actual statements attributed to Chmura or specify when or where the alleged statement(s) were made. Chmura has no knowledge of any alleged "threats of legal action" and, in all events, if any such

2

statement was made, it was not authorized by Chmura. (Exhibit A, Declaration of Christine Chmura ¶ 7 (hereinafter, "Chmura Decl.").)

**B.    WIN's Allegations Relating to Chmura's Contacts with Tennessee.**

With respect to Chmura's contacts with Tennessee, WIN alleges the following:

> 11.    Chmura has provided and currently provides services to customers in Tennessee.
>
> 12.    Chmura conducted training programs in Kingston, Tennessee, WIN compensating Chmura for conducting such programs.
>
> 13.    Chmura executed a joint development agreement with WIN.

(Compl. ¶¶ 11-13.) Notably missing from WIN's Complaint are any allegations that Chmura has accused WIN, directly, of infringing the '659 Patent or has engaged in other licensing or enforcement activities in or directed into Tennessee with respect to the '659 Patent.

**C.    Chmura's Limited Contacts with Tennessee.**

Chmura is a Virginia limited liability company headquartered in Richmond, Virginia. (Chmura Decl. ¶ 2.)  It is a full service consulting firm specializing in applied economic consulting, quantitative research and software solutions. (Chmura Decl. ¶ 3.)  Chmura has no presence in Tennessee.  Specifically, Chmura:

- Was not formed and is not registered to do business in Tennessee;

- Does not own, rent, lease, use or possess property or facilities in Tennessee;

- Does not pay taxes in Tennessee;

- Does not maintain a bank account in Tennessee;

- Does not have any employees in or working out of Tennessee;

- Does not sell products to customers in Tennessee;

- Apart from WIN, does not have clients or other business relationships with parties located in Tennessee; and

- Does not regularly provide any services in Tennessee.

(Chmura Decl. ¶ 4.)

Chmura personnel have visited Tennessee only four times on Chmura business. Chmura's principals, Christine Chmura and Leslie Peterson, visited WIN in Tennessee twice in 2005, once in June and once in July, to discuss a possible business relationship. (Chmura Decl. ¶ 5(b).) In February and October 2008, Chmura personnel traveled to Tennessee to provide training on the "Strategic Compass Powered by JobsEQ" product. (Chmura Decl. ¶ 5(h).) During the more than two and one-half years between July 2005 and February 2008, Chmura did not visit the State of Tennessee.

WIN's other contacts with Tennessee have been limited. In September 2006, Chmura sent WIN by email a proposal entitled, "Developing a 'Strategic Compass' Template for Workforce and Economic Strategic Planning" (the "Proposal"). (Chmura Decl. ¶ 5(c).) In this Proposal, Chmura presented the concept of allowing WIN to become a distributor of Chmura's proprietary "JobsEQ" software and using some of the outputs from JobsEQ to power a new software product to be called "Strategic Compass Powered by JobsEQ" that Chmura would develop and license to WIN. (Chmura Decl. ¶ 5(c).) WIN executed the Proposal on or around September 14, 2006, and Chmura proceeded with the work described therein. (Chmura Decl. ¶ 5(d).) All of Chmura's work in developing the "Strategic Compass Powered by JobsEQ" software was performed by Chmura employees outside of Tennessee. (Chmura Decl. ¶ 5(f).)

Subsequent to executing the Proposal, the parties attempted unsuccessfully to negotiate a more complete written contract to memorialize their agreement. (Chmura Decl. ¶ 5(g).) The

4

relationship between Chmura and WIN deteriorated during 2008, and the parties discontinued their contract negotiations and joint marketing efforts in or around late 2008. (Chmura Decl. ¶ 5(i).) Chmura continues to service WIN accounts, including two related entities in Tennessee, that have licensed the "Strategic Compass Powered by JobsEQ" software from WIN. (Chmura Decl. ¶ 5(i).)

## III.   ARGUMENT

WIN's Complaint should be dismissed because WIN has failed to plead and cannot prove facts sufficient to invoke this Court's declaratory judgment jurisdiction and, alternatively, because this Court lacks personal jurisdiction over Chmura.

### A.   WIN Has Not Alleged Facts Sufficient to Establish the Court's Subject Matter Jurisdiction Over This Declaratory Judgment Action.

#### 1.   Applicable Legal Standards.

##### a.   WIN has not met its burden of pleading facts establishing that the exercise of subject matter jurisdiction over this action would be proper.

A party asserting federal jurisdiction has the burden of establishing it. *See Benitec Austl., Ltd. v. Nucleonics, Inc.*, 495 F.3d 1340, 1343-44 (Fed. Cir. 2007). To meet this burden, "subject matter jurisdictional facts must be pleaded, and later proved when challenged." *Spectronics Corp. v. H.B. Fuller Co.*, 940 F.2d 631, 635 (Fed. Cir.), *cert. denied*, 502 U.S. 1013 (1991). As the party seeking to invoke federal subject matter jurisdiction under the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201-02 (the "Act"), WIN must allege facts sufficient to establish the existence of an "actual controversy." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (quoting *Aetna Life*, 300 U.S. at 240-41)[1]; 28 U.S.C. § 2201 (in a case of "actual

---

[1] "[T]he phrase 'actual controversy' in § 2201(a) includes any controversy over which there is Article III jurisdiction." *Caraco Pharm. Labs., Ltd. v. Forest Labs., Inc.*, 527 F.3d 1278, 1290

controversy within its jurisdiction," a federal district court "may declare the rights . . . of any interested party seeking such declaration"); *Int'l Med. Prosthetics Research Assoc., Inc. v. Gore Enter. Holdings, LLC*, 787 F.2d 572, 575-76 (Fed. Cir. 1986) (noting that to establish that jurisdiction over a declaratory judgment action "existed at, and has continued since, the time the complaint was filed," "[the plaintiff] must establish 'the existence of facts underlying' an allegation that an 'actual controversy existed'" (quoting *Jervis B. Webb Co. v. S. Sys., Inc.*, 742 F.2d 1388, 1399 (Fed. Cir. 1984))).

In deciding the sufficiency of a declaratory judgment plaintiff's jurisdictional allegations, "[t]he question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc.,* 549 U.S. at 127 (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)).

b. **WIN must prove its jurisdictional fact allegations.**

Because WIN has not pled a sufficient factual basis for the exercise of subject matter jurisdiction over this action, the Complaint should be dismissed without further inquiry. However, if the Court finds that the fact allegations of the Complaint are sufficient to invoke the Court's subject matter jurisdiction, because Chmura has challenged those allegations, the Court must go on to determine whether those allegations are true.

As noted above, when a defendant challenges a plaintiff's jurisdictional allegations, the plaintiff must come forward with evidence proving those allegations. *See Spectronics Corp.*, 940 F.2d at 635. No presumption of truth attaches to plaintiff's allegations. *Cedars-Sinai Med. Ctr.*

---

(Fed. Cir. 2008) (citing *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 239-40 (1937)); *Prasco, LLC v. Medicis Pharm. Corp.*, 537 F.3d 1329, 1335 (Fed. Cir. 2008) ("as long as the suit meets the case or controversy requirement of Article III, a district court may have jurisdiction over a declaratory judgment action.").

631056.1

*v. Watkins*, 11 F.3d 1573, 1583 (Fed. Cir. 1993). Rather, the court is free to hear evidence and resolve factual disputes. *Watkins*, 11 F.3d at 1584.

Chmura has challenged WIN's jurisdictional fact allegations by denying that it or anyone authorized by it has told third parties either that WIN's system infringes the '659 Patent or that Chmura would sue WIN for patent infringement if WIN released its system. (Chmura Decl. ¶ 7.) In the face of this denial, if WIN is found to have met its burden of pleading facts to support the existence of federal subject matter jurisdiction, it must still prove those allegations, and ultimately, the Court must decide this factual dispute.[2]

### 2. WIN's Single Jurisdictional Fact Allegation Is Not Sufficient to Meet Its Burden of Establishing Subject Matter Jurisdiction Over This Action.

WIN's sole jurisdictional fact allegation is as follows:

> 8. Upon information and belief, Chmura alleged to third parties that WIN's system infringes the '659 patent and that Chmura would bring a legal action against WIN for patent infringement in the event WIN introduced its system to the market.

(Compl. ¶ 8.) This allegation is, at best, based on second-hand information WIN claims to have received from the unidentified third parties. WIN then alleges that:

> 9. In view of Chmura's accusations of infringement of the '659 patent and its threats of legal action, WIN has a reasonable fear and apprehension that patent infringement litigation will be brought against it.

(Compl. ¶ 9.) WIN's only asserted ground for establishing federal declaratory judgment jurisdiction, therefore, is that as a result of Chmura's alleged statements to third parties WIN has "a reasonable fear and apprehension that patent infringement litigation will be brought against it."

---

[2] Should WIN come forward with evidence supporting its jurisdictional fact allegations, Chmura reserves the right to seek leave to conduct limited discovery of those allegations.

631056.1

In *MedImmune, Inc. v. Genentech, Inc.*, the Supreme Court rejected the Federal Circuit's "reasonable apprehension" test as the sole test for determining the existence of subject matter jurisdiction in patent declaratory judgment actions and reaffirmed that, in deciding questions of declaratory judgment jurisdiction, district courts should consider the "totality of the circumstances." 549 U.S at 127, 132 n.11. However, as the Federal Circuit has subsequently noted, *MedImmune* did not reject the reasonable apprehension test entirely. *Prasco*, 537 F.3d at 1336. Even after *MedImmune*, "proving a reasonable apprehension of suit is one of multiple ways that a declaratory judgment plaintiff can satisfy the more general all-the-circumstances test to establish that an action presents a justiciable Article III controversy." *Id.*

In the present case, WIN asserts a "reasonable fear and apprehension that patent infringement litigation will be brought against it" as the basis for invoking declaratory judgment jurisdiction. (Compl. ¶ 9.) Thus, while the "reasonable apprehension" test is no longer the exclusive test for declaratory judgment jurisdiction, it is the factual basis on which WIN seeks to establish this Court's subject matter jurisdiction. Consequently, Federal Circuit law defining and applying the reasonable apprehension test remains relevant in determining whether WIN has met its burden of pleading and proving the existence of federal subject matter jurisdiction.

Under the reasonable apprehension test, a declaratory judgment plaintiff must show both:

> (1) an explicit threat or other action by the patentee, which creates a reasonable apprehension on the part of the declaratory judgment plaintiff that it will face an infringement suit and (2) present activity [by the declaratory judgment plaintiff] which could constitute infringement or concrete steps taken with the intent to conduct such activity.

*Teva Pharms. USA, Inc. v. Novartis Pharms. Corp.*, 482 F.3d 1330, 1339 (Fed. Cir. 2007) (citing *Teva Pharms. USA, Inc. v. Pfizer, Inc.*, 395 F.3d 1324, 1332-33 (Fed. Cir. 2005)); *Prasco*, 537 F.3d at 1336. "The required reasonable apprehension must be an objective, not purely

8

subjective, apprehension." *Int'l Med. Prosthetics,* 787 F.2d at 575. In this case, WIN has failed to plead facts sufficient to satisfy the first prong of the reasonable apprehension test. Because no such "threat or other action" by Chmura has occurred, WIN cannot prove facts that would satisfy this prong of the test.

WIN's allegation "upon information and belief" that Chmura told unidentified third parties it would bring an infringement action against WIN if WIN introduced its system does not establish an "explicit threat or other action by [Chmura] which creates a reasonable apprehension on the part of [WIN] that it will face an infringement suit." *Teva Pharms. USA,* 395 F.3d at 1332. Even if the third parties told WIN that Chmura made these statements, the statements themselves are not "explicit threats." At most, these statements were hypothetical and conjectural and, as such, are incapable of creating an objectively reasonable apprehension of suit. Therefore, the fact allegations in the Complaint, even if true, are not sufficient under the reasonable apprehension test to meet WIN's burden of pleading facts establishing the existence of an actual controversy.

Even under the "totality of the circumstances" test articulated in *MedImmune, Inc. v. Genentech, Inc.* and adopted by the Federal Circuit in *SanDisk Corp. v. STMicroelectronics, Inc.,* 480 F.3d 1372, 1380 (Fed. Cir. 2007), the bare allegations in WIN's Complaint fail to satisfy WIN's burden of pleading facts sufficient to demonstrate that an "actual controversy" exists. For WIN to have standing to invoke the Court's declaratory judgment jurisdiction under the totality of the circumstances test, it must allege, among other elements "an injury-in-fact, i.e., a harm that is *concrete* and *actual* or *imminent,* not conjectural or hypothetical . . ." *Id.* (emphasis added); *see also Caraco,* 527 F.3d at 1291; *Teva Pharms. USA, Inc. v. Novartis Pharms. Corp.,* 482 F.3d 1330, 1337 (Fed. Cir. 2007); *Allen v. Wright,* 468 U.S. 737, 751 (1984); *Schlesinger v.*

631056.1

*Reservists Comm. to Stop the War*, 418 U.S. 208, 218 (1974) ("[W]hatever else the 'case or controversy' requirement embodie[s], its essence is a requirement of 'injury in fact.'"). "Absent an injury-in-fact fairly traceable to the patentee, there can be no immediate and real controversy." *Prasco*, 537 F.3d at 1338.

WIN's allegation that Chmura told third parties it would bring an infringement action if WIN introduced its system to the market, standing alone, does not establish "a controversy of sufficient immediacy and reality to create a justiciable controversy" within the meaning of the Declaratory Judgment Act and Article III of the Constitution. *See Prasco*, 537 F.3d at 1338. The statements WIN attributes to Chmura relate, at most, to a hypothetical possible future action and have not caused and could not cause WIN "an injury-in-fact" that is "concrete and actual or imminent." *See Prasco, LLC v. Medicis Pharm. Corp.,* at 1340 ("The defendants' lack of any 'concrete claim of a specific right is an important factor weighing against a finding of an actual controversy.'"). Notably, according to the Complaint, WIN has introduced its system, and presumably is marketing it to prospective clients, notwithstanding the alleged threats by Chmura. (Compl. ¶ 7.) Thus, the alleged statements which form the basis for WIN's assertion of federal subject matter jurisdiction have not caused WIN any injury-in-fact. The fact that WIN has introduced its system despite the alleged threats of infringement litigation demonstrates that any injury-in-fact WIN may claim to have suffered because of Chmura's alleged statements would be "conjectural or hypothetical" and could not form the basis for declaratory judgment jurisdiction. *See SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d, at 1380. Consequently, even under the totality of the circumstances test, WIN has not pled sufficient facts to invoke this Court's declaratory judgment jurisdiction and the Complaint should be dismissed.

631056.1

Case 3:09-cv-00121-TWP-HBG   Document 9   Filed 05/11/09   Page 10 of 22   PageID #: 77

Because WIN's Complaint fails to establish an actual controversy sufficient to invoke the Court's declaratory judgment jurisdiction, WIN's Complaint should be dismissed for lack of subject matter jurisdiction.

### 3. Chmura Denies the Jurisdictional Allegation in WIN's Complaint.

If the Court determines that WIN has not satisfied its burden of pleading jurisdictional facts, it should dismiss the Complaint without further inquiry. However, if the Court determines that WIN's fact allegations, if true, would establish federal declaratory judgment jurisdiction over WIN's Complaint, it must decide whether those factual allegations are, in fact, true.

Chmura denies the allegation that it told third parties it would file an infringement action against WIN if WIN released its system. (*See* Chmura Decl. ¶ 7.) When a defendant challenges plaintiff's jurisdictional fact allegations, the burden shifts to the plaintiff to come forward with evidence proving those fact allegations. *Watkins*, 11 F.3d at 1583-84. In ruling on a factual challenge to an assertion of federal subject matter jurisdiction, "the allegations in the complaint are not controlling," and no presumption of truth attaches to plaintiff's allegations. *Id.* at 1583. Rather, the court is free to hear evidence and resolve factual disputes when necessary. *Id.* at 1584. In view of Chmura's denial of WIN's subject matter jurisdictional fact allegation, WIN must come forward with evidence sufficient to prove those facts. Because Chmura did not make the statements WIN alleges as the basis for establishing subject matter jurisdiction, WIN will be unable to meet this burden. As a result, the Court lacks subject matter jurisdiction over WIN's Complaint, and the Complaint should be dismissed.

11

**B.    Chmura Is Not Subject to Personal Jurisdiction in Tennessee with Respect to the Claims Asserted in WIN's Complaint.**

**1.    Applicable Legal Standards.**

"A plaintiff in a federal civil action is required to include in his complaint a statement of the grounds upon which the court's jurisdiction depends." *see* 15 Wright & Miller, Federal Practice and Procedure § 3826, at 256 (1986); *see* Fed. R. Civ. P. 8(a). Because WIN seeks a declaratory judgment that the '659 Patent is invalid, unenforceable and not infringed, Federal Circuit law governs the personal jurisdiction inquiry. *Elecs. for Imaging v. Coyle,* 340 F.3d 1344, 1348 (Fed. Cir. 2003) ("[W]here the personal jurisdictional inquiry is 'intimately involved with the substance of the patent laws,' we apply Federal Circuit law."). Under Federal Circuit law, WIN has the burden of pleading a *prima facie* case of personal jurisdiction by alleging facts that, if true, would establish that the exercise of personal jurisdiction over Chmura is proper. *Id.* at 1349.

In determining whether the exercise of personal jurisdiction over a foreign defendant, like Chmura, is proper, this Court must engage in a two-step analysis. The first step is to determine whether Tennessee's long-arm statute reaches Chmura given the cause of action alleged and the nature of Chmura's contacts with Tennessee. *See International Shoe Co. v. Washington*, 326 U.S. 310, 316-20 (1945). The second step requires determining whether the exercise of personal jurisdiction under the circumstances is consistent with due process. *Id.*

With respect to the first step, the Federal Circuit defers to the forum state's highest court to interpret the state's long-arm statute, but applies its own law to determine the question of due process. *See Akro Corp. v. Luker*, 45 F.3d 1541, 1544-45 (Fed. Cir. 1995). Because Tennessee's long-arm statute extends personal jurisdiction to the fullest extent permitted by due process, the statutory inquiry merges with the constitutional inquiry, and the two become one due process

12

analysis. *Masada Inv. Corp. v. Allen*, 697 S.W.2d 332, 334 (Tenn. 1985); *see also* Tenn. Code Ann. § 20-2-214(a)(6) (permitting jurisdiction over nonresidents for any action or claim for relief arising from "any basis not inconsistent with the constitution of [Tennessee] or of the United States").

With respect to the due process analysis, for a foreign defendant to be subject to jurisdiction, it must have certain "minimum contacts" with the forum state such that asserting jurisdiction would be consistent with "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington,* 326 U.S. at 316. "It is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).[3]

Personal jurisdiction may be either general or specific depending on the nature and quality of the foreign defendant's contact with the forum State. In order to assert general jurisdiction over a foreign defendant, the defendant's activities in the State must have been "continuous and systematic," a more demanding standard than is necessary for establishing specific jurisdiction. *Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1330 (Fed. Cir. 2008) ("To establish the minimum contacts necessary to establish general personal jurisdiction, plaintiffs bear a higher burden."). With respect to determining specific personal jurisdiction, the Federal Circuit has reduced the due process considerations to a three-part test:

> The three factors for determining whether the exercise of personal jurisdiction over an out-of-state defendant comports with due process are: 1) whether the defendant "purposefully directed" its

---

[3] While the constitutional inquiry in a federal question case such as this is governed by the Fifth Amendment's due process clause rather then the due process clause of the Fourteenth Amendment, the *International Shoe* analysis still applies. *See Deprenyl Animal Health, Inc. v. University of Toronto Innovations Foundation*, 297 F.3d 1343, 1349 (Fed. Cir. 2002).

631056.1

activities at residents in the forum; 2) whether the claim "arises out of or relates to" the defendant's activities in the forum; 3) whether the exercise of jurisdiction is "reasonable and fair."

*Deprenyl,* 297 F.3d at 1351 (quoting *Inamed Corp. v. Kuzmak,* 249 F.3d 1356, 1359 (Fed. Cir. 2001)). Chmura is not subject to general or specific jurisdiction in Tennessee.

## 2.    Chmura Is Not Subject to General Jurisdiction in Tennessee.

WIN's jurisdictional allegations do not establish that Chmura is subject to general personal jurisdiction in Tennessee. Under a theory of general jurisdiction, "the exercise of jurisdiction is proper where the defendant has continuous and systematic contacts with the forum state, even if those contacts are not related to the cause of action." *Elecs. Imaging,* 340 F.3d at 1349 (citing *Helicopteros Nacionales de Columbia S.A. v. Hall,* 466 U.S. 408, 416 (1984)). WIN has not alleged systematic and continuous contacts by Chmura with the forum state of Tennessee. In the Complaint, WIN alleges only that "Chmura has provided and currently provides services to customers in Tennessee" (Compl. ¶ 11), "Chmura conducted training programs in Kingston, Tennessee" (Compl. ¶ 12), and "Chmura executed a joint development agreement with WIN" (Compl. ¶ 13). These allegations, even if taken as true, do not establish contacts sufficiently "continuous" or "systematic" to subject Chmura to general jurisdiction in Tennessee.

In *Helicopteros Nacionales de Columbia S.A. v. Hall,* the Supreme Court considered whether a foreign defendant's contacts with the State of Texas were sufficient to support the exercise of general jurisdiction. 466 U.S. at 418-19. The facts of that case showed that the defendant, Helicol, had the following contacts with the forum state of Texas: it sent its chief executive officer to Texas for a contract negotiation session; it accepted checks drawn on a Texas bank; it purchased $4 million worth of goods, including helicopters and equipment, from

631056.1

the forum over seven years; and its personnel attended training and seminars in Texas. *Id.* at 411. In concluding that these contacts were not sufficient to subject Helicol to general jurisdiction in Texas, the Court noted that the one trip to Texas by Helicol's chief executive officer for purposes of negotiating the contract "[could] not be described or regarded as a contact of a 'continuous and systematic' nature," and that Helicol's acceptance of checks drawn on a Texas bank was "of negligible significance for purposes of determining whether Helicol had sufficient contacts in Texas." *Id.* at 416. Relying on its opinion in *Rosenberg Bros. & Co. v. Curtis Brown Co.*, 260 U.S. 516 (1923), the Court then noted that Helicol's purchases of helicopters and equipment, "even if occurring at regular intervals," and its related training trips to Texas were not enough to warrant an assertion of jurisdiction over the defendant. 466 U.S. at 417-18. Important to the Court's decision were the facts that Helicol had not applied for a license to do business in Texas, did not have any employees in Texas, did not own any real or personal property in Texas, and did not maintain an office, establishment or records in Texas. *Id.* at 411, 417.

Similarly, Chmura has had minimal direct contacts with Tennessee. It made only two visits to Tennessee to meet with WIN to discuss a possible business relationship, both in 2005. (Chmura Decl. ¶ 5(b).) It then visited Tennessee twice in 2008 to provide training on the "Strategic Compass Powered by JobsEQ" product to WIN clients. (Chmura Decl. ¶ 5(h).) Chmura's four visits to Tennessee over a four year period, separated by two years without any visits to Tennessee, "[could] not be described or regarded as a contact of a 'continuous and systematic' nature[.]" *See Helicopteros*, 466 U.S. at 416. Furthermore, as in Helicol, Chmura is not incorporated or registered to do business in Tennessee; does not own or lease property or facilities in Tennessee; has no employees working in or out of Tennessee; does not sell products

631056.1

to customers in Tennessee; aside from its business relationship with WIN, has not entered into any agreements with parties or entities that could be deemed "residents" of Tennessee; does not manufacture any products in Tennessee; and does not regularly provide any services in Tennessee. (Chmura Decl. ¶ 4.) Chmura's contacts with Tennessee are far less significant than the contacts between Helicol and Texas that the Supreme Court found in *Helicopteros* to be insufficient to establish general jurisdiction. Consequently, Chmura is not subject to general jurisdiction in Tennessee.

      **3.**    **Chmura is Not Subject to Specific Jurisdiction in Tennessee with Respect to the Claims WIN Asserts in this Declaratory Judgment Action.**

As noted above, the Federal Circuit has adopted a three-part test for determining specific personal jurisdiction: 1) whether the defendant purposefully directed its activities at residents of the forum, 2) whether the claim arises out of or relates to the defendant's activities with the forum state, and 3) whether the assertion of personal jurisdiction is reasonable and fair. *Elecs. Imaging*, 340 F.3d at 1350 (citing *Akro*, 45 F.3d at 1545). In the context of an action for declaratory judgment of patent invalidity, unenforceability, and non-infringement, the activities of the defendant to be examined in determining specific personal jurisdiction are limited to activities relating to defendant's licensing and enforcement of the patent-in-suit, in this case Chmura's activities in licensing and enforcing the '659 Patent. *See Avocent Huntsville Corp.*, 552 F.3d at 1332 (noting that claims in a declaratory judgment action "neither directly arise[] out of nor relate[] to the making, using, offering to sell, selling, or importing of arguably infringing products in the forum, but instead arise[] out of or relate[] to the activities of the defendant patentee in enforcing the patent or patents in suit").

631056.1

### a. Chmura Does Not Have the Constitutionally Required Minimum Contacts with Tennessee Because it Has Not Purposefully Directed Any Patent Enforcement Activities at Residents of Tennessee.

Though WIN alleges in its Complaint that Chmura has provided services in Tennessee, conducted training programs in Tennessee, and executed a joint development agreement with WIN (Compl. ¶¶ 11-13), the only allegation concerning Chmura's patent enforcement activities is that "[u]pon information and belief, Chmura alleged to third parties that WIN's system infringes the '659 patent and that Chmura would bring a legal action against WIN for patent infringement in the event WIN introduced its system to the market." (Compl. ¶ 8.) No allegations are made concerning when, where, or to whom Chmura allegedly made these statements. Assuming, without admitting, that Chmura made statements to this effect to third parties, such statements alone do not constitute conduct sufficient to subject Chmura to specific personal jurisdiction in Tennessee.

The Federal Circuit has consistently held that mere threats to sue for infringement directed into the forum do not subject the patent owner to personal jurisdiction there. *See Silent Drive, Inc. v. Strong Indus., Inc.*, 326 F.3d 1194, 1202 (Fed. Cir. 2003) ("the sending of letters threatening infringement litigation is not sufficient to confer personal jurisdiction"); *see also Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1360-61 (Fed. Cir. 1998) (holding that letters threatening suit for patent infringement sent to the alleged infringer "do not suffice to create personal jurisdiction" because to exercise jurisdiction in such a situation would not comport with fair play and substantial justice). WIN's allegation against Chmura does not even rise to the level of sending infringement letters; instead, WIN alleges only an oral communication it claims Chmura made to an unknown third party. Even if such a

communication had occurred, it plainly would not be sufficient to subject Chmura to personal jurisdiction in Tennessee.

Moreover, contacts resulting from "the unilateral activity of another party or third person" are not attributable to a defendant and cannot be used to confer jurisdiction over that defendant. *Red Wing Shoe*, 148 F.3d at 1361; *see also Helicopteros*, 466 U.S. at 417 ("unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum state to justify an assertion of jurisdiction."). Even accepting WIN's allegations as true, they show only that one or more third parties, not Chmura, conveyed the alleged threat to WIN. Any statements made or other actions taken by these unidentified third parties without Chmura's knowledge or consent, are not sufficient to create personal jurisdiction over Chmura in Tennessee.

Furthermore, Chmura has not engaged in any enforcement activity with respect to the '659 Patent in or directed into Tennessee, nor has it engaged in any "other activities" in Tennessee that relate in some identifiable way to enforcement of the '659 Patent. *See Silent Drive*, 326 F.3d at 1202 ("For the exercise of personal jurisdiction to comport with fair play and substantial justice, there must be 'other activities' directed at the forum and related to the cause of action besides the letters threatening an infringement suit."). Examples of "other activities" relevant to the specific personal jurisdiction analysis include initiating judicial or extrajudicial patent enforcement within the forum and entering into an exclusive license agreement or other undertaking with a resident of the forum state which imposes enforcement obligations. *See Campbell Pet Co. v. Miale*, 542 F.3d 879, 886 (Fed. Cir. 2008).

Chmura has not conducted any enforcement or "other activities" relating the '659 patent in or directed into Tennessee and, therefore, has not purposefully availed itself of the laws of

Tennessee in any relevant way. Consequently, the exercise of personal jurisdiction over Chmura in this case would violate due process, and the Complaint should be dismissed.

> **b.** **WIN's Cause of Action Does Not Arise Out Of Any Contact Chmura Has With Tennessee.**

Due process also prevents the Tennessee long-arm statute from reaching Chmura because WIN's cause of action does not arise out of any contacts Chmura has had with Tennessee. In patent-related declaratory judgment actions, "the patentee is the defendant, and the claim asserted by the plaintiff relates to the wrongful restraint on the free exploitation of non-infringing goods such as the threat of an infringement suit." *Avocent,* 552 F.3d at 1332. Thus, the nature of the claim in a declaratory judgment action is to "clear the air of infringement charges." *Id.* Such a claim "arises out of or relates to the activities of the defendant patentee in enforcing the patent in suit." *Id.* Chmura has not engaged in any licensing, enforcement or other activities with respect to the '659 Patent in or directed into Tennessee; therefore, WIN's declaratory judgment action does not arise out of any of Chmura's contacts with Tennessee.

Specific jurisdiction relies on a nexus between the defendant's contacts with the forum state and the cause of action. Such a nexus is entirely absent here. WIN's claims in this action do not "arise out of" or "relate to" any of Chmura's limited contacts with Tennessee, and Chmura has not engaged in any patent enforcement or licensing activities in Tennessee directed at WIN or any other Tennessee resident. Accordingly, because WIN's cause of action does not arise out of any of Chmura's contacts with Tennessee, the exercise of specific personal jurisdiction over Chmura would violate due process.

631056.1

c.     **It Would Be Neither Fair Nor Reasonable to Exercise Personal Jurisdiction over Chmura.**

Finally, the Complaint alleges no facts showing that it would be fair or reasonable to exercise jurisdiction over Chmura in Tennessee.   In order to assess whether the exercise of jurisdiction would be "fair" and "reasonable," a court considers several factors, including:

> 1) the burden on the defendant, 2) the interest of the forum state, 3) the plaintiff's interest in obtaining relief, . . . and 5) the shared interest of the several states in furthering fundamental social policies.

*Deprenyl,* 297 F.3d at 1355; *see ACH Food Companies, Inc.*, No. 04-2589, 2005 U.S. Dist. LEXIS 44732, at *28 (W.D. Tenn. Aug. 30, 2005) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980)).

Given the facts described above and in the attached Declaration of Christine Chmura, there is no basis for concluding that fairness considerations weigh in favor of WIN's chosen forum.   Here, the burden on Chmura – a small company headquartered in Virginia with no Tennessee presence – of litigating in a foreign forum is significant.   Further, because Chmura has not engaged in any patent-related activities in Tennessee or directed at Tennessee residents, Tennessee has a minimal interest in this action.   Given that Chmura has not accused WIN of infringing the '659 Patent, WIN's interest in obtaining relief is entirely contrived.   Finally, the interstate judicial system's interests in efficiency are best served by dismissal which would allow the suit to be brought in Virginia where personal jurisdiction over Chmura exists.   On these facts, the exercise of jurisdiction over Chmura in this case would be neither fair nor reasonable and would, therefore, violate due process.

631056.1

## CONCLUSION

WIN's Complaint fails to establish that an actual controversy between the parties of sufficient immediacy and reality to warrant the issuance of a declaratory judgment and, in fact, no such controversy exists. Accordingly, WIN's Complaint should be dismissed for lack of subject-matter jurisdiction. Alternatively, because Chmura's contacts with Tennessee are insufficient under the Tennessee long-arm statute and the due process clause of the Fifth Amendment to the U.S. Constitution to subject Chmura to jurisdiction in Tennessee with respect to the claims asserted in WIN's Complaint, WIN's Complaint should be dismissed for lack of personal jurisdiction over Chmura.

Respectfully submitted this 11th day of May, 2009.

WOOLF, MCCLANE, BRIGHT,
ALLEN & CARPENTER, PLLC

By: /s/ Robert L. Vance
Robert L. Vance (BPR #021733)

900 Riverview Tower
900 S. Gay Street
Knoxville, Tennessee 37902
865-215-1000 (telephone)
865-215-1001 (fax)

*Attorney for Defendant Chmura Economics &*
*Analytics, Inc.*

21

## CERTIFICATE OF SERVICE

I hereby certify that on May 11, 2009, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. mail. Parties may access this filing through the Court's electronic filing system.

s/Robert L. Vance
Robert L. Vance, Esq., (BPR #021733)

WOOLF, McCLANE, BRIGHT,
  ALLEN & CARPENTER, PLLC
Post Office Box 900
Knoxville, Tennessee 37901-0900
(865) 215-1000

631056.1