# EXHIBIT 5

IN THE CIRCUIT COURT OF ROANE COUNTY, TENNESSEE

| | |
|---|---|
| WORLDWIDE INTERACTIVE NETWORK, INC., </br> Plaintiff, </br> v. </br> </br> CHMURA ECONOMICS & ANALYTICS, LLC, *et al.*, </br> Defendants. | Case No.: 14298 |

## ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIM

COMES NOW defendant Chmura Economics & Analytics, LLC ("Chmura"), and states as follows in support of its Answer, Affirmative Defenses and Counterclaim against Worldwide Interactive Network, Inc. ("WIN"):

## ANSWER

1. Chmura is without sufficient information to either admit or deny the allegations contained in Paragraph 1 of the Complaint, but has no specific reason to deny the same.

2. Chmura admits that it is a Virginia limited liability company, but denies the remaining allegations contained in Paragraph 2 of the Complaint.

3. Chmura is without sufficient information to either admit or deny the allegations contained in Paragraph 3 of the Complaint, but has no specific reason to deny the same.

4. Chmura admits that it entered into an agreement with WIN, but denies that the September 13, 2006 document encompasses the entirety of this agreement. Chmura admits that it anticipated providing certain of its products to WIN pursuant to its agreement with WIN, but denies that the remaining allegations contained in Paragraph 4 of the Complaint accurately

describe what Chmura was to provide. Chmura denies the remaining allegations contained in Paragraph 4 of the Complaint.

5. To the extent the allegations contained in Paragraph 5 of the Complaint are legal conclusions or statements, Chmura does not need to respond. To the extent that such statements are in fact allegations, Chmura denies that the document referenced constitutes the entirety of the agreement and relationship between the parties, and requests that should this Court allow WIN to provide SAI a copy of this document, that SAI be directed not to disclose the same to any third party. Chmura denies the remaining allegations contained in Paragraph 5 of the Complaint.

6. Chmura denies the allegations contained in Paragraph 6 of the Complaint.

7. Chmura is without sufficient information to either admit or deny the allegations contained in Paragraph 7 of the Complaint.

8. Chmura denies the allegations contained in Paragraph 8 of the Complaint.

9. Chmura denies it ever breached its agreement with WIN, denies that it was induced by SAI to take any such actions to breach any agreement with WIN, and is without sufficient information to either admit or deny the remaining allegations contained in Paragraph 9 of the Complaint.

10. Chmura denies that the document referenced constitutes the entirety of its relationship with WIN, denies that it breached any agreement with WIN, denies that it was induced by SAI to take any actions to breach a contract with WIN, and is without sufficient information to either admit or deny the remaining allegations contained in Paragraph 10 of the Complaint.

11. Chmura denies the allegations contained in Paragraph 11 of the Complaint.

12. Chmura denies the allegations contained in Paragraph 12 of the Complaint.

2

13. Chmura denies the allegations contained in Paragraph 13 of the Complaint.

14. Chmura denies the allegations contained in Paragraph 14 of the Complaint.

In response to the WHEREFORE clause, Chmura states that WIN is not entitled to judgment against Chmura in any amount, and requests that this Court enter judgment against WIN in this Complaint, dismiss the Complaint as to Chmura, award Chmura its fees and costs in responding to the Complaint, and for all such other relief as this Court deems appropriate.

## AFFIRMATIVE DEFENSES

1. Any matter not specifically admitted herein is denied.

2. Plaintiff did not comply with the requirements of the parties' Agreement.

3. Plaintiff's claim is barred under a theory of unclean hands.

4. Plaintiff's claim is barred under a theory of unjust enrichment.

5. Without admitting there was an agreement on the terms alleged to be breached, the parties modified terms of the relationship between them.

6. WIN materially breached the Agreement prior to any alleged breach by Chmura.

7. WIN failed to mitigate its damages.

8. There was no meeting of the minds and/or a failure of consideration on the terms alleged to be breached.

9. Plaintiff's claim is barred under a theory of set-off.

10. Plaintiff's claim is barred under a theory of waiver.

11. Plaintiff's claim is barred under a theory of estoppel.

12. Chmura reserves the right to rely upon such other affirmative defenses as evidence may show in the course of discovery.

3

## COUNTERCLAIM

## STATEMENT OF FACTS

1. In June and July 2005, upon WIN's request, Chmura met with WIN to discuss a relationship between WIN and Chmura to market software known as JobsEQ® (an existing, free standing, proprietary software previously developed, used and licensed by Chmura). Chmura also discussed providing WIN the opportunity to market software which had yet to be developed known as the Strategic Compass®, powered by JobsEQ® ("Strategic Compass Overlay"). The Strategic Compass Overlay was a product intended to be tailored to the specific needs and goal development of Chmura's potential licensees who were various state agencies and authorities.

2. In September 2006, Chmura submitted a proposal to WIN via email outlining certain proposed terms for a relationship between the parties and offering WIN a pricing structure for licensing Chmura's products in specific states ("Partial Memorandum of Understanding" or "PMOU").

3. As admitted by Plaintiff in its Complaint, the PMOU stated that "the content of this proposal shall not be disclosed and shall not be duplicated, used, stored in any retrieval system, transmitted in any form or discussed in whole or in part" to third parties without Chmura's consent.

4. In addition to the PMOU, the parties expanded and clarified specific terms of their agreement through other verbal and written communications and practices (the "Agreement"). The Agreement outlined the parties' relationship for purposes of marketing and licensing Chmura's proprietary software to WIN's customers. Chmura also shared with WIN its potential target clients.

5. WIN clearly understood that JobsEQ®, and ultimately Strategic Compass Overlay, were Chmura's proprietary property, subject to trade secret protection, and which Chmura kept protected and/or confidential. Chmura provided WIN access to JobsEQ®, licenses to JobsEQ®, and other proprietary information based on the understanding that WIN would not disclose or improperly utilize these or any other of Chmura's proprietary products or information.

6. Pursuant to the Agreement, Chmura agreed to allow WIN to license Chmura's JobsEQ® to Mobile, Alabama, to the state of South Carolina, and to a specific entity in Tennessee (collectively, the "Regional Users"). Chmura also agreed to provide initial start up training and off-site support to the Regional Users, and to develop Chmura's Strategic Compass Overlay, allowing properly licensed users to track the progress of certain goals based on the data created by JobsEQ®. While nothing in the Agreement prevented Chmura from marketing or licensing its own products to other entities, WIN did need additional approval from Chmura to market and to license or sell Chmura's products (including but not limited to JobsEQ® and Strategic Compass Overlay) to entities other than the Regional Users.

7. Ultimately, because WIN indicated that the Regional Users in Alabama and South Carolina did not need and/or want the Strategic Compass Overlay at that time, Chmura suspended further development of the Strategic Compass Overlay. However, the parties at that time agreed that WIN could market JobsEQ® under the name and as the "WIN Strategic Compass, powered by JobsEQ®" as long as Chmura was properly identified, cited or referenced as the owner of JobsEQ®.

8. WIN and Chmura further agreed that once a specific licensee agreed to purchase, WIN would pay Chmura the entire amount due for the yearly license fees in advance upon Chmura's providing the purchased license for JobsEQ® to such licensee. WIN paid Chmura up

5

front for the use of JobsEQ® software for the licensed entity in Alabama and the licensed entity in Tennessee as required, but has only paid Chmura on a monthly basis from November 1, 2008 until April, 2009 for the state of South Carolina's use of JobsEQ®. WIN has informed Chmura that as of May 1, 2009, WIN does not intend to pay Chmura the remaining amounts due for South Carolina's use of JobsEQ® under the Agreement.

9. However, upon information and belief, at least on one occasion when WIN approached another potential JobsEQ® client, it led such entity to believe that JobsEQ® and the Strategic Compass Overlay belonged to WIN, not Chmura. The parties discussed the potential, but never finalized or consummated an agreement, for WIN to license or use Chmura's products outside of the Regional Users. Moreover, WIN expressly agreed it would not promote JobsEQ® or Strategic Compass Overlay in Virginia or Ohio to compete with Chmura's own marketing of JobsEQ®.

10. In fact, upon information and belief, WIN has improperly utilized trade secret information contained in Chmura's JobsEQ® Power Point presentations, incorporated portions of the PMOU into WIN's own Power Point presentations to its potential clients without indicating that such information was Chmura's and without Chmura's permission for use of the same.

11. Further, in November, 2008, Chmura learned that WIN was awarded a contract to provide a JobsEQ® like software, and/or to provide JobsEQ® itself, without Chmura's knowledge or permission, to the Metropolitan Development Association of Syracuse and Central New York ("New York"), but leading New York to believe it was contracting for Chmura's JobsEQ®. Moreover, in order to obtain this contract WIN had relied upon Chmura to conduct a presentation on JobsEQ® to New York on May 22, 2008, hoping that Chmura's previous

6

relationship with New York and goodwill, as well as the quality of Chmura's JobsEQ® and its presentation, would lead New York to award WIN the contract.

12. In the alternative, and upon information and belief, WIN may have taken Chmura's confidential and trade secret information, including that contained in JobsEQ® itself, and used it within WIN's own platform, with the assistance of Iradix Consulting, for use in marketing and delivering a competitive product to clients, such as New York.

13. Moreover, in November 2008, WIN submitted a response ("Response") to Virginia Community College District and Workforce Investment Council's ("Virginia Community Colleges") Request for Proposal # CIC-2008-121, and included in its Response a "value added" item that appeared to contain information taken from JobsEQ® or was JobsEQ® itself, but was provided to Virginia Community Colleges without Chmura's knowledge or permission.

14. In outlining its experience in South Carolina and Alabama, WIN stated in its Response that each of the entities it worked with in those states "implemented the <u>WIN Strategic Compass</u>,"(emphasis added) but failed to state and/or intentionally omitted that it had worked with Chmura and used <u>Chmura's</u> JobsEQ® as the WIN Strategic Compass in those states. Moreover, WIN's submission of its Response was a direct violation of WIN's agreement not to promote JobsEQ® or Strategic Compass Overlay in Virginia to compete with Chmura's own marketing of JobsEQ®.

15. Further, upon information and belief, WIN not only attempted to sell and/or present JobsEQ® to potential clients without Chmura's knowledge, but in fact may have given away JobsEQ® free of charge to certain users, thus devaluing Chmura's product in Chmura's marketplace.

7

## COUNT I – Breach of Contract

16. Chmura incorporates the allegations in paragraphs 1 through 15 above as if included herein by reference.

17. Chmura and WIN had an Agreement for WIN to market Chmura's JobsEQ® to select Regional Users, for which Chmura would be compensated.

18. WIN breached its Agreement with Chmura by failing to fully compensate Chmura for the fees required for the annual JobsEQ® licenses Chmura has provided to the state of South Carolina.

19. WIN breached its Agreement with Chmura by using portions of Chmura's Power Point presentations and PMOU in its own Power Point presentations, and by including portions of the PMOU on WIN's website in violation of the PMOU and the parties' express understanding about the proprietary nature of JobsEQ® and related information.

20. Upon information and belief, WIN also breached its Agreement with Chmura by selling JobsEQ® and/or providing JobsEQ® licenses to entities, including but not limited to New York, without Chmura's permission and without compensating Chmura for the same.

21. In the alternative, WIN breached its Agreement with Chmura by using confidential information contained in JobsEQ® within its own platform for use with New York and other entities, in violation of the confidentiality provisions of the PMOU, as well as the parties' express understanding about the proprietary nature contained within JobsEQ® and related information.

22. WIN also breached its Agreement not to promote JobsEQ® or Strategic Compass Overlay in Virginia to compete with JobsEQ® by submitting its Response to the Virginia Community Colleges' RFP.

8

23. WIN also breached its Agreement with Chmura by sharing, disclosing or using Chmura's confidential and proprietary information with others, including but not limited to Iradix Consulting, and WIN's potential and actual clients and/or by using Chmura's confidential and proprietary information in WIN's own platform without Chmura's permission or knowledge.

24. As a result of these breaches Chmura has been damaged in an amount to be proven at trial, but in an amount no less than $10,000,000.

## COUNT II – Misappropriation of Trade Secrets/Violation of Virginia Trade Secrets Act

25. Chmura incorporates the allegations in paragraphs 1 through 24 above as if included herein by reference.

26. As part of the Agreement, Chmura shared with WIN its proprietary and confidential information and trade secrets, including but not limited to JobsEQ®, licenses to the same, client target list, the goals of Strategic Compass Overlay, presentation information, and other similar information. WIN was prohibited from disclosing and/or using any of this information without Chmura's consent.

27. Upon information and belief WIN has either shared such confidential information with unauthorized parties and/or used such confidential information within its own platform or for its own marketing efforts without Chmura's authorization.

28. Such actions constitute a misappropriation of Chmura's trade secrets under the Virginia Uniform Trade Secrets Act, Virginia Code Sections 59.1-336 et seq.

29. As a result of such actions Chmura has been significantly damaged in an amount to be proven at trial but in an amount no less than $10,000,000.

9

## COUNT III – Conversion

30. Chmura incorporates the allegations in paragraphs 1 through 29 above as if included herein by reference.

31. JobsEQ®, Chmura's Power Point presentations regarding JobsEQ®, as well as Chmura's potential client and contact lists, processes for marketing and other related business information, constitute Chmura's personal property.

32. WIN, without Chmura's authority or permission, exercised undue and unauthorized dominion over Chmura's personal property to use it to promote WIN and/or sell Chmura's proprietary products for its own use without lawful purpose.

33. Accordingly Chmura has been damaged in an amount to be proven at trial, but in an amount no less than $10,000,000.

## COUNT IV – Tortious Interference

34. Chmura incorporates the allegations in paragraphs 1 through 33 above as if included herein by reference.

35. WIN was aware of Chmura's business relationships and contacts with various regional entities, including but not limited to New York and Virginia Community Colleges.

36. WIN tortiously interfered with these relationships by, among other things, promoting JobsEQ® and/or Strategic Compass Overlay in Virginia to compete with Chmura's own marketing of JobsEQ®, and/or by trading off Chmura's presentation to and goodwill with New York regarding JobsEQ®.

37. There was a reasonable certainty that absent WIN's intentional misconduct, Chmura would have obtained and/or would have been included in the contract award from New York.

10

38. WIN's intentional and improper conduct interfered with and directly prevented Chmura from obtaining these business opportunities.

39. As a result of WIN's intentional and improper conduct, Chmura has been damaged in an amount to be proven at trial, but in an amount of at least $10,000,000.

## COUNT V – Common Law Conspiracy

40. Chmura incorporates the allegations in paragraphs 1 through 39 above as if included herein by reference.

41. Upon information and belief, WIN worked in concert with others, including but not limited to Iradix Consulting, to take confidential information contained within JobsEQ® and use it within WIN's platform without Chmura's permission for the same.

42. Also upon information and belief, WIN worked in concert with Fletcher Mangum, Katherine DeRosear and/or Iradix Consulting to reverse-engineer JobsEQ® algorithms for WIN's benefit and/or used proprietary information contained in Chmura's Power Point presentations and PMOU as WINS's own to market to potential clients without Chmura's permission or any indication that such information belonged to or was generated by Chmura.

43. Further, WIN conspired with Iradix Consulting and others to convert Chmura's personal property, to tortiously interfere with Chmura's business, and/or to misappropriate Chmura's trade secrets.

44. WIN and its co-conspirators took such actions for the purpose of willfully or maliciously injuring Chmura in its reputation, trade, business and profession.

45. As a result of this intentional conduct, Chmura has been damaged in an amount to be proven at trial, but in an amount of at least $10,000,000.

11

## COUNT VI - Statutory Conspiracy pursuant to Va. Code §§ 18.2-499 and 500

46. Chmura incorporates the allegations in paragraphs 1 through 45 above as if included herein by reference.

47. Upon information and belief, WIN worked in concert with others, including but not limited to Iradix Consulting, to take confidential information contained within JobsEQ® and use it within WIN's platform without Chmura's permission for the same.

48. Also upon information and belief, WIN worked in concert with Fletcher Mangum, Katherine DeRosear and/or Iradix Consulting to reverse-engineer JobsEQ® algorithms for WIN's benefit and/or used proprietary information contained in Chmura's Power Point presentations and PMOU as WIN's own to market to potential clients without Chmura's permission or any indication that such information belonged to or was generated by Chmura.

49. WIN and its co-conspirators took such actions for the purpose of willfully or maliciously injuring Chmura in its reputation, trade, business and profession.

50. As a result of this intentional conduct, Chmura has been damaged in an amount to be proven at trial, but in an amount of at least $10,000,000, not including the trebling of damages Chmura is entitled to under the statute.

## COUNT VII – Unfair Competition

51. Chmura incorporates the allegations in paragraphs 1 through 50 above as if included herein by reference.

52. For the purpose of deceiving the public and/or potential clients, WIN has simulated Chmura's name, symbols, and/or devices, as well as substituted Chmura's goods and wares for its own.

12

53.     Upon information and belief, WIN led potential and actual clients to believe that JobsEQ® and the Strategic Compass Overlay belonged to WIN and not Chmura by, among other actions, using material from Chmura's Power Point presentation in its presentations, having Chmura attend marketing presentations such as the one in New York and then passing off its own products, including in Virginia (e.g., the Virginia Community Colleges Request for Proposal) as solely WIN's with no credit to Chmura and/or otherwise generally insinuating or expressly stating to clients and potential clients that JobsEQ® belonged to WIN and not Chmura.

54.     As a result, WIN falsely induced the purchase of its wares and obtained for itself the benefits properly belonging to Chmura.

55.     Chmura's product(s) have acquired secondary meaning and significance that identifies them with Chmura.

56.     WIN has unfairly used Chmura's product(s)' name and/or a simulation of them to the prejudice of Chmura's interests.

57.     Moreover, WIN has used or referenced or alluded to JobsEQ® as being its own, without indicating Chmura's involvement and without Chmura's permission, in an attempt to mislead potential customers about the nature of WIN's experience and/or the products it proposed for use by such potential customers.

58.     Additionally, WIN has engaged in unfair competition with Chmura through conduct which includes but is not limited to the following: utilizing trade secrets and other information in Chmura's Power Point presentations; misrepresenting the nature of WIN's relationship with Chmura to potential customers (e.g., New York); and misrepresenting Chmura's product as belonging to WIN.

13

59. As a result of this intentional conduct, Chmura has been damaged in an amount to be proven at trial, but in an amount of at least $10,000,000.

## COUNT VIII - Misappropriation of Trade Secrets/Violation of the Tennessee Uniform Trade Secrets Act

60. Chmura incorporates the allegations in paragraphs 1 through 59 above as if included herein by reference.

61. As part of the Agreement, Chmura shared with WIN its proprietary and confidential information and trade secrets, including but not limited to JobsEQ®, licenses to the same, client target list, the goals of Strategic Compass Overlay, presentation information, and similar information. WIN was prohibited from disclosing and/or using any of this information without Chmura's consent.

62. Upon information and belief WIN has either shared such confidential information with unauthorized parties and/or used such confidential information within its own platform or for its own marketing efforts without Chmura's authorization.

63. Such actions constitute a misappropriation of Chmura's trade secrets under the Tennessee Uniform Trade Secrets Act, Tenn. Code Ann. §§ 47-25-1701, et seq.

64. WIN's misappropriation of Chmura's trade secrets was willful and malicious.

65. As a result of such actions, Chmura has been significantly damaged in an amount to be proven at trial, but in an amount no less than Ten Million Dollars ($10,000,000.00).

66. WIN's willful and malicious misappropriation of Chmura's trade secrets entitles Chmura to an award under the Tennessee Uniform Trade Secrets Act, Tenn. Code Ann. §§ 47-25-1701, et seq., of exemplary damages in an amount not exceeding twice the award under the Act and its reasonable attorneys' fees.

14

WHEREFORE, for the foregoing reasons Chmura Economics & Analytics, LLC respectfully requests this Court to enter judgment in its favor and grant the following relief:

As to Count I, Breach of Contract, judgment in an amount to be determined at trial, but in any event no less than TEN MILLION DOLLARS ($10,000,000.00);

As to Count II, Misappropriation of Trade Secrets/Violation of Virginia Trade Secrets Act, judgment in an amount to be determined at trial, but in any event no less than TEN MILLION DOLLARS ($10,000,000.00);

As to Count III, Conversion, judgment in an amount to be determined at trial, but in any event no less than TEN MILLION DOLLARS ($10,000,000.00);

As to Count IV, Tortious Interference, judgment in an amount to be determined at trial, but in any event no less than TEN MILLION DOLLARS ($10,000,000.00);

As to Count V, Common Law Conspiracy, judgment in an amount to be determined at trial, but in any event no less than TEN MILLION DOLLARS ($10,000,000.00);

As to Count VI, Statutory Conspiracy, judgment in an amount to be determined at trial, but in any event no less than TEN MILLION DOLLARS ($10,000,000.00), plus trebled damages and attorneys' fees;

As to Count VII, Unfair Competition, judgment in an amount to be determined at trial, but in any event no less than TEN MILLION DOLLARS ($10,000,000.00);

As to Count VIII, Misappropriation of Trade Secrets Under the Tennessee Uniform Trade Secrets Act, Tenn. Code Ann. §§ 47-25-1701, et seq., judgment in an amount to be determined at trial, but in any event no less than TEN MILLION DOLLARS ($10,000,000.00), plus exemplary damages not to exceed twice the award made under the Act and reasonable attorneys' fees.

Further, Chmura asks for its attorneys' fees, its costs in defending against and bringing this Counterclaim, for judgment against WIN as to the Complaint and Counterclaim for the amounts and for the basis identified above and for all such other relief as this Court deems appropriate.

Respectfully submitted this 8th day of June, 2009.

> WOOLF, McCLANE, BRIGHT,
> ALLEN & CARPENTER, PLLC
>
> By: *(signature)*
>
> Robert L. Vance, BPR #021733
> WOOLF, McCLANE, BRIGHT,
> ALLEN & CARPENTER, PLLC
> Post Office Box 900
> Knoxville, TN 37901-0900
> Tel: (865) 215-1000
>
> Patricia A.C. McCullagh, Esq., VSB #43456
> MCCANDLISH HOLTON, PC
> 1111 East Main Street, Suite 1500
> P.O. Box 796
> Richmond, VA 23218-0796
> Tel: (804) 775-3100
> *Pro hac vice* application pending
>
> *Counsel for Defendant,*
> *Chmura Economics & Analytics, LLC*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and exact copy of the foregoing pleading has been served upon the following counsel for the parties in interest herein by delivering same to the offices of said counsel, or by mailing same to the offices of said counsel by United States Mail with sufficient postage thereon to carry the same to its destination.

Morris Kizer, Esq.
Gentry, Tipton & McLemore, P.C.
P.O. Box 1990
Knoxville, TN 37901

Allison B. Martin, Esq.
Miller & Martin
Volunteer Bldg., Ste. 1000
832 Georgia Avenue
Chattanooga, TN 37402-2289

This the 8th day of June, 2009.

_____
Attorney