# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| WORLDWIDE INTERACTIVE NETWORK, INC., | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No.: 3:09-CV-00121 ) |
| CHMURA ECONOMICS & ANALYTICS, LLC, | ) ) ) ) |
| Defendant. | ) |

## REPLY BRIEF IN SUPPORT
## OF DEFENDANT'S MOTION TO DISMISS

Defendant Chmura Economics & Analytics, LLC ("Chmura"), by counsel, submits this Reply Brief in Support of Chmura's Motion to Dismiss this action for lack of subject-matter jurisdiction and, in the alternative, for lack of personal jurisdiction.

### I. INTRODUCTION

In its brief opposing the pending Motion to Dismiss, Plaintiff Worldwide Interactive Network, Inc. ("Worldwide") has submitted hundreds of pages of documents and affidavits, as well as pages of new narrative, in support of its contention that it feared patent infringement litigation at the hands of Chmura (the "Worldwide Mem."). The "facts" described in Worldwide's brief bear little relationship to its Complaint, and "[e]ven under liberal federal rules of pleading, the practice of amending by brief seems inappropriate." *Chambliss v. Coca-Cola Bottling Corp.*, 274 F. Supp. 401, 408 (E.D. Tenn. 1967). Regardless, though, Worldwide derives little, if any, benefit from its effort. None of Worldwide's contentions, alone or in combination, identifies a controversy between the parties ***pertaining to the enforcement or***

*defense of a patent* or to the conduct of Chmura that would cause it to anticipate being haled into court in Tennessee *regarding a patent*.

Two things are indisputable: (1) Chmura and Worldwide have a disagreement ripe for adjudication, and (2) this dispute has nothing to do with a patent. Chmura and Worldwide are presently engaged in litigation pending in Tennessee Circuit Court in Roane County, Case No. 14,298 (the "State Court Lawsuit"). Jurisdiction is not an issue in the State Court Lawsuit. The parties, there, are contending over a contract, and Worldwide is defending claims of misappropriation of trade secrets and unfair competition. The facts and circumstances that gave rise to the State Court Lawsuit cannot automatically generate subject matter jurisdiction for a patent lawsuit in this Court, or for personal jurisdiction over Chmura in this patent lawsuit.

Subject matter jurisdiction must be evaluated on the merits of the specific facts underlying the subject of the litigation. *SanDisk v. STMicroelectronics*, 480 F.3d 1372, 1377 (Fed. Cir. 2007). Because there is no "substantial controversy" between the parties of "sufficient immediacy and reality" pertaining to the subject of the litigation before this Court, namely, *patent litigation*, subject matter jurisdiction is not present here. *See, MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (citations omitted). For this reason alone, Worldwide's Complaint before this Court should be dismissed.

In addition, the facts alleged by Worldwide in support of its Complaint demonstrate that Chmura has had only limited and sporadic contacts with Tennessee, and none of those contacts gave rise to Worldwide's claims in this patent action. Therefore, the Court should also dismiss Worldwide's Complaint for lack of personal jurisdiction.

## II. WORLDWIDE'S COMPLAINT IS DEFECTIVE FOR LACK OF SUJBECT MATTER JURISDICTION

Worldwide's opposition to the pending Motion to Dismiss includes hundreds of pages of documents and affidavits. Within this collection are a total of only six alleged facts, none of which can support subject matter jurisdiction for declaratory judgment on a patent. As described in more detail below, the six facts allegedly occurred in the context of four incidents. While there is no question that Worldwide and Chmura have a dispute, it is clear from even a casual inspection of the incidents, these new allegations do not give rise to subject matter jurisdiction for the pending declaratory judgment patent action.

Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction are reviewed on two levels. 2-12 *Moore's Federal Practice - Civil* § 12.30 (Matthew Bender 3d ed.). First, the facts plead are assumed to be true to determine whether the court has subject matter jurisdiction. Then, because the burden of proving subject matter jurisdiction lies with the plaintiff, and cannot be waived by the defendant (*see* Fed. R. Civ. P. 12(h)(3)), subject matter jurisdiction can only be found if the court *then also* weighs the facts presented by the litigants to determine whether subject matter jurisdiction exists. *See, e.g., Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. Ohio 1990) ("A *facial* attack on the subject matter jurisdiction alleged by the complaint merely questions the sufficiency of the pleading. In reviewing such a facial attack, a trial court takes the allegations in the complaint as true.... On the other hand, when a court reviews a complaint under a *factual* attack..., no presumptive truthfulness applies to the factual allegations.") (emphasis in the original); *DDB Techs., L.L.C. v. MLB Advanced Media, L.P.*, 517 F.3d 1284, 1294 (Fed. Cir. 2008) (remanded to allow district court to perform fact assessment to determine whether subject matter jurisdiction existed).

3

In the matter currently before this Court, Worldwide has alleged a total of six facts that pertain to subject matter jurisdiction. These six facts are alleged to have arisen in the context of settlement negotiations with Worldwide's attorney, a presentation at a conference in Washington D.C. on March 9, 2009, a conversation at the conference that occurred the next day, and in a letter to another Worldwide independent contractor. As is shown below, the six facts, even if taken as true, do not refer or relate to a *patent* dispute between Worldwide and Chmura and therefore cannot convey subject matter jurisdiction on this Court to adjudicate a patent case.

Furthermore, as the Court has the opportunity to review Worldwide's characterization of the six facts in the context of the counter declaration of Christine Chmura, Ph.D. filed contemporaneously herewith as Exhibit A (the "Chmura Counter Decl."), the Court will see that any controversy between the parties is limited to the claims at issue in the State Court Lawsuit. Because the facts alleged by Worldwide do not refer or relate to a patent dispute between the parties, there is no "substantial controversy" between the parties of "sufficient immediacy and reality" pertaining to the patent litigation before the Court. *MedImmune* at 127. Worldwide's Complaint before this Court should therefore be dismissed for lack of subject matter jurisdiction.

A. **Settlement Negotiations With Worldwide's Attorney, John Brock.**

In opposition to the pending Motion to Dismiss, Worldwide makes the following three fact allegations based on communications with its attorney, John Brock:[1]

---

[1] The statements alleged by Mr. Brock to have been made by Chmura's counsel were clearly made, if at all, in the course of settlement negotiations between the parties, and the document in Exhibit A to the Brock Aff. is marked confidential. None of the statements in Mr. Brock's affidavit pertaining to these communications are admissible under Fed. R. Evid. 408. Chmura therefore respectfully requests that Mr. Brock's affidavit, and those portions of Worldwide's argument that rely on the affidavit, be disregarded.

4

636254.1
Case 3:09-cv-00121-TWP-HBG   Document 15   Filed 06/25/09   Page 4 of 20   PageID #: 299

- Mr. Brock was apparently under the impression that Chmura was concerned that Worldwide was claiming ownership of Chmura's "intellectual property" in the marketplace. Brock Aff. ¶ 7.

- Mr. Brock was supposedly under the impression that Chmura was concerned that Worldwide was reverse engineering a replacement to JobsEQ, which possibly infringed Chmura's "intellectual property" rights, and so Chmura requested that Worldwide agree not to reverse engineer JobsEQ. Brock Aff. ¶ 7.

- Chmura's counsel, by email to Mr. Brock, said that if the drafting process related to settlement is going to unduly delay resolution, then "Chmura will need to explore other means of resolving its concerns." Brock Aff., Ex. A.

Even if they were taken to be true, none of these three "facts" bears any relation to the declaratory judgment action as plead by Worldwide. No dispute regarding Worldwide's *ownership* of intellectual property is before the Court. No dispute pertaining to breach of contract forbidding Worldwide's *reverse engineering* of Chmura's JobsEQ software is before the Court. No dispute is before the Court pertaining to Worldwide's failure to make timely payments under its pre-existing license agreement with Chmura, or Chmura's efforts to *explore other means* to receive the benefit of its bargain with Worldwide. These issues are the subject of the pending State Court Lawsuit, and do not relate to patent litigation. Therefore they cannot form the basis of subject matter jurisdiction for the lawsuit before this Court.

**B.     Worldwide's NAWB Presentation (March 9, 2009).**

On about March 9, 2009, Worldwide's Strategic Policy Advisor, Katherine A. DeRosear, allegedly attended the National Association of Workforce Boards Forum in Washington D.C. (the "NAWB Forum"), where she allegedly overheard Chmura's president make a comment to an unrelated third party. Worldwide makes the following fact allegation regarding the content of that comment:

- Chmura supposedly made a single comment to an unrelated third party, suggesting the content of the presentation that Ms. DeRosear was about to give would generate relevance for Worldwide "having a trial attorney." DeRosear Aff. ¶ 9.

5

Assuming it was characterized correctly by Worldwide, Dr. Chmura's remark was prescient. Worldwide did in fact need a trial attorney when it filed the State Court Lawsuit against Chmura. However, the State Court Lawsuit has nothing to do with a patent, so even if Ms. DeRosear's comment is taken as true, this remark cannot give rise to subject matter jurisdiction for patent litigation.

Putting aside for the moment the actual content of Dr. Chmura's comment, the timing here cannot be overlooked. Dr. Chmura made any comment *before* Ms. DeRosear gave her presentation. Chmura Counter Decl. ¶ 2. The Chmura Patent (U.S. Pat. 7,480,659) is extraordinarily lengthy and sophisticated. It is not possible to threaten patent litigation over the content of a Worldwide presentation prior to Worldwide disclosing its technology in the presentation. Weighing the facts demonstrates that the events surrounding Worldwide's NAWB Presentation of March 9, 2009, do not relate to patent litigation and cannot therefore give rise to subject matter jurisdiction.

### C. NAWB Forum (March 10, 2009).

On about March 10, 2009, Worldwide's independent consultant, Tim Alford, was alleged to have been in attendance at the NAWB Forum, and to have had a conversation with Dr. Chmura and Leslie Peterson, who is an employee of Chmura. Worldwide does not provide an affidavit of its consultant, Dr. Alford. Instead, Worldwide provides an affidavit of Worldwide's owner and C.E.O., Dr. Chasteen. Her affidavit is unhelpful not merely because it lacks a first-hand account of the alleged conversation. Dr. Chasteen's affidavit does not even purport to provide the verbatim substance of the alleged conversation. Her affidavit is completely speculative and conclusory regarding the nature of the alleged conversation of Dr. Alford.

6
636254.1

Moreover, it is inadmissible as triple hearsay.[2] Chmura therefore respectfully requests that the Court disregard paragraph 17 of Dr. Chasteen's affidavit.

Contrary to Dr. Chasteen's hearsay allegation, in actuality, Ms. Peterson did not speak with Dr. Alford on the occasion described by Dr. Chasteen. Chmura Counter Decl. ¶ 3. It was Dr. Chmura who said to Dr. Alford: "We trusted Theresa [Chasteen], but we found out something that surprised and disappointed us." Chmura Counter Decl. ¶ 3. Although there may be a number of ways in which this statement could be characterized, it is impossible to twist this into evidence of a controversy regarding patent infringement. Because the events occurring at the NAWB Forum of March 10, 2009, do not relate to patent litigation, they cannot, therefore, give rise to subject matter jurisdiction.

### D. Correspondence With Worldwide's Consultant, Fletcher Mangum.

Worldwide claims that it has received from its independent consultant, Fletcher Mangum, an excerpt he took from a piece of correspondence that he allegedly received from someone he regards as a "labor lawyer" purporting to represent Chmura. On this slender reed, Worldwide attempts to hang subject matter jurisdiction in this patent case. Rather than provide an affidavit from its consultant, Dr. Mangum, Worldwide instead has provided a speculative and opinion-ladened affidavit of Worldwide's owner, Dr. Chasteen.[3]

---

[2] *I.e.*, (1) the Affidavit says that (2) Dr. Chasteen says that (3) Dr. Alford said that Dr. Chmura and Ms. Peterson said "X."

[3] Worldwide's reliance on Dr. Mangum as a source of evidence is questionable, given its apparent attempt to compensate or protect him. *See,* Chasteen Aff., Ex. E at 2 (Theresa Chasteen, writing by email dated March 3, 2009 to Dr. Mangum: "Can you please send a copy/scan of the letter from Chmura. It will only be shared with attorney, John Brock to write the indemnification language.")

Dr. Chasteen's affidavit regarding Dr. Mangum is a remarkable display of *six-fold*[4] hearsay. In addition, Dr. Chasteen's affidavit fails to quote verbatim from the information it references. Dr. Chasteen merely provides her personal speculations of what the communication might have contained. Because Dr. Chasteen's affidavit is speculative and inadmissible six-fold hearsay, Chmura respectfully requests that the Court disregard paragraph 18 of Dr. Chasteen's affidavit.

Even if taken as true, Worldwide makes a single, unremarkable allegation based on communications allegedly received by its consultant, Dr. Mangum:

- Chmura, through a labor lawyer, allegedly said, "[a]ny software application *you* may write or contribute to will be subject to close scrutiny by Chmura to determine whether such software infringes on JobsEQ. Furthermore, Chmura will take all legal actions necessary to protect its software and to compensate itself for any damages it incurs as a result of such infringement." Chasteen Aff. ¶ 18 and Ex. E (emphasis added).

The most that can be inferred here is that Chmura was concerned about the individual conduct of an independent contractor. In addition, Dr. Mangum performs services in the same field as Chmura, and he also lives in Richmond, Virginia, in close proximity to Chmura's place of business. Chmura Counter Decl. ¶ 4. Infringement of Chmura's trade secret information via misappropriation is an important subject that is currently at issue in the State Court Lawsuit. Facts and circumstances that have given rise to the state law issues and causes of action have no bearing on patent litigation, and cannot be leveraged to manufacture subject matter jurisdiction here. Because the information regarding Fletcher Mangum is unreliable six-fold hearsay and merely opinion of a fact matter, it should be set aside. Even if it is taken into consideration, it

---

[4] *I.e.,* (1) the Affidavit says that (2) Dr. Chasteen says that (3) Dr. Mangum says that (4) this is an excerpt from (5) a letter from (6) a labor lawyer who says Chmura said "X."

does not relate to patent litigation and therefore cannot give rise to subject matter jurisdiction for this patent lawsuit.

While there is a controversy between Worldwide and Chmura, there is no dispute between the parties relating to a patent. Worldwide's resort to a declaratory judgment patent action here is merely an impermissible attempt to acquire an advisory opinion, which is cause itself to dismiss Worldwide's Complaint. *MedImmune* at 139 ("[T]he declaratory judgment procedure . . . may not be made the medium for securing an advisory opinion in a controversy which has not arisen.") (internal quotations and citations omitted). Worldwide's Complaint before this Court should therefore be dismissed for lack of subject matter jurisdiction.

### III. WORLDWIDE'S COMPLAINT IS DEFECTIVE FOR LACK OF GENERAL PERSONAL JURISDICTION

Worldwide expends merely a page of argument in an effort to shoulder its burden to demonstrate that this Court has *general* personal jurisdiction over Chmura. Worldwide Mem. at 15. A plaintiff's burden when trying to establish general personal jurisdiction is "even higher" than is required to establish specific jurisdiction. *Avocent v. Aten Intl.*, 552 F.3d 1324, 1330 ("[t]o establish the minimum contacts necessary to establish general personal jurisdiction, plaintiffs bear a higher burden."). Worldwide alleges only the following in order to meet its burden that Chmura's contacts with Tennessee meet the standard of "having a physical presence within the state." *Autogenomics v. Oxford Gene*, 2009 U.S. App. LEXIS 10459 at 7 (Fed. Cir. 2009).

- In September 2006, Chmura emailed a contract from Virginia to Worldwide in Tennessee.

- Chmura sent invoices from Virginia to Worldwide in Tennessee for payment under the contract.

- Chmura conducted "multiple" (i.e., two) training sessions in Tennessee in support of the contract.

9

- In February 2008, Chmura emailed a Retainer Agreement from Virginia to Worldwide in Tennessee, where Chmura would access Worldwide's servers from Virginia.

Worldwide Mem. at 21. Surprisingly, Worldwide concludes without support or explanation, "[t]his is distinguishable from the defendant of *Helicopteros*...." Worldwide Mem. at 21.

Actually, general jurisdiction "requires that the defendant have continuous and systematic contacts with the forum state." *Autogenomics* at 10 (internal quotations omitted) (citing *Silent Drive, Inc. vs. Strong Indus., Inc.,* 326 F.3d 1194 (Fed. Cir. 2003), quoting *Helicopteros Nacionales de Colombia, S.A. v Hall,* 466 U.S. 408, 416). "[S]poradic and insubstantial contacts with the forum state...are not sufficient to establish general jurisdiction over the defendants in the forum." *Autogenomics* at 11.

In *Helicopteros,* the defendant did not have a place of business in the forum state, and was not licensed to do business in the forum state of Texas. *Helicopteros* at 416. Its contacts were even more intensive than those Worldwide alleges Chmura has performed, here. They consisted of "sending its chief executive officer to Houston for a contract-negotiation session; accepting into its New York bank account checks drawn on a Houston bank; purchasing helicopters, equipment, and training services from Bell Helicopter for substantial sums; and sending personnel to Bell's facilities in Fort Worth for training." *Helicopteros* at 416. The Supreme Court held that the defendant's contacts did not "constitute the kind of continuous and systematic general business contacts" necessary to create general personal jurisdiction. *Helicopteros* at 416. Like the defendant in *Helicopteros,* Chmura does not have an actual physical presence or license to do business in Tennessee, and nothing here exceeds the commercial contacts that the Supreme Court held were insufficient in *Helicopteros* to create general personal jurisdiction. *Cf., Autogenomics* at 12.

## IV. WORLDWIDE'S COMPLAINT IS DEFECTIVE FOR LACK OF SPECIFIC PERSONAL JURISDICTION

Worldwide cites almost exclusively from the 2003 opinion of the Court of Appeals for the Federal Circuit, *Electronics for Imaging v. Coyle,* 340 F.3d 1344 (Fed. Cir. 2003) (hereafter *"Electronics 2003"*), to illustrate facts necessary to create specific personal jurisdiction. Interestingly, after *Electronics 2003* was remanded to the District Court, the case came before the Federal Circuit again in 2005. *See, Electronics for Imaging,* 394 F.3d 1341 (Fed. Cir. 2005) (hereafter *"Electronics 2005"*). *Electronics 2005* sheds light on the record and the nature of the controversy between the parties Jan R. Coyle and Kolbet Labs ("Coyle") and Electronics for Imaging, Inc. ("EFI"). Unlike the characterization in Worldwide's argument in its opposition to the Motion to Dismiss, that litigation did not come about because of a few isolated phone calls or emails (Worldwide Mem. at 16) or product demonstrations or training sessions (Worldwide Mem. at 17). Notably:

1. Coyle determined that EFI was manufacturing products within the scope of Coyle's patent application. *Electronics 2005* at 1343.

2. Coyle notified EFI that his patent would soon issue, and the "patent would cover all of EFI's print controllers." *Electronics 2005* at 1343-44.

3. "Coyle began to pressure EFI on an almost daily basis, threatening to drive EFI out of business...repeatedly warn[ing] that he would bring multiple lawsuits, stating that 'we'll sue all of your customers' and 'bad things are going to happen.'" *Electronics 2005* at 1344 (citations omitted).

4. Coyle even identified to EFI specific attorneys and law firms he would use to enforce his patent against EFI in support of his litigation threats. *Electronics 2005* at 1344.

5. "EFI's general counsel traveled to Nevada on December 5, 2001 to negotiate terms of an agreement by which EFI could purchase or license Coyle's technology. In the course of the discussions, Coyle stated that 'I will sue you and I will fight' and that 'all hell will break loose, I will fight until the end....'" *Electronics 2005* at 1344 (internal citations omitted).

6. "Additionally, Coyle purportedly gave EFI an ***ultimatum***, warning that December 15 was the deadline to pay ('If we don't get a deal, we will pull the trigger and execute the litigation')...." *Electronics 2005* at 1344 (emphasis added) (internal citations omitted).

Coyle, therefore, had:

- determined patent infringement was likely;

- informed the putative patent infringer;

- demanded a remedy directly and repeatedly from the patent infringer;

- threatened patent infringement litigation, and identified specific litigators and law firms to conduct the infringement litigation;

- evidenced a willingness to litigate a patent infringement action until the destruction of the opposing party; and,

- levied a time-based ultimatum on the putative defendant, after which a patent infringement lawsuit would be brought.

Coyle was bent on enforcing his patent against EFI, and nothing was going to get in his way. Based on that record, there is little reason to doubt why the court found the phone calls, visits, threats and allegations levied by Coyle against a California defendant all directed at impending patent litigation could give rise to personal jurisdiction over Coyle in California for a declaratory judgment of non-infringement and invalidity of Coyle's patent. Quite unlike Coyle threatening EFI's destruction with patent litigation, the facts alleged by Worldwide regarding Chmura's conduct toward Worldwide has been of a completely different tenor, character and nature.

12

First and foremost, unlike Coyle, Chmura does not have access to the product Worldwide is selling in the marketplace, and therefore Chmura cannot determine whether Worldwide's product infringes Chmura's patent. *Q-Pharma, Inc. v. Andrew Jergens Co.*, 360 F.3d 1295, 1300-1301 (Fed. Cir. 2004) ("[i]n the context of patent infringement actions, we have interpreted Rule 11 to require, at a minimum, that an attorney interpret the asserted patent claims and compare the accused device with those claims before filing a claim alleging infringement.") (citations omitted). Because Chmura cannot determine whether Worldwide's product infringes Chmura's patent, Worldwide is not at risk of being the target of patent infringement litigation at the hands of Chmura. Moreover, as explained in detail in Section II, above, Worldwide has presented no evidence that Chmura has indicated a desire or ability to enforce its patent against Worldwide. Chmura's conduct has focused instead on entering into, performing and resolving issues related to its contract with Worldwide.

Second, as will be shown in detail below, Chmura's (very few) contacts with Tennessee, on which Worldwide attempts to rely, are related directly to a contractual agreement between the parties. As stated earlier, the parties have a pending disagreement about that contract, which is the subject of the State Court Lawsuit. Virtually everything having to do with the performance of the contract by Chmura has occurred outside Tennessee. When that relationship began to deteriorate, Chmura initiated additional communications with Worldwide in an effort to facilitate a resolution. Not surprisingly, then, the most Worldwide could argue is that Chmura has had a handful of isolated contacts with Tennessee related to formation of the contract, its performance, and the heartfelt attempt to resolve the parties' dispute.

Rather than reach an amicable resolution, Worldwide has chosen to sue Chmura in the State Court Lawsuit. This is unfortunate, but it is Worldwide's right and privilege. However,
13

Worldwide cannot now manufacture a "federal case" out of the facts and circumstances that gave rise to the state law claims presently being litigated in the State Court Lawsuit. "[C]ontacts material to the specific jurisdiction analysis in a declaratory judgment action are not just any activities related to the patent-at-issue. Rather, the relevant activities are those that the defendant purposefully directs at the forum which relate in some material way to the *enforcement or the defense of the patent.*" *Autogenomics* at 18 (emphasis added) (internal citations and quotations omitted). Therefore, because Worldwide has initiated a declaratory judgment action regarding a *patent*, Worldwide has the burden of proving that Chmura is subject to the personal jurisdiction of this Court based on Chmura's contacts associated with the "enforcement or defense" of the patent at issue. Instead, Worldwide's allegations regarding Chmura's conduct relate entirely to Chmura's "own commercialization activity" which does not give rise to specific personal jurisdiction in a declaratory judgment action on a patent. *See, Autogenomics* at 17. Each of the three sets of fact allegations that Worldwide makes in support of its argument for specific personal jurisdiction is addressed in turn, below:

### A. Formation of the Contract in Dispute in the State Court Lawsuit Does Not Relate to "Enforcement or Defense" of a Patent.

Worldwide makes several allegations regarding the formation of the contract that is at issue in the State Court Lawsuit:

- "In June and July of 2005, [Chmura], by its principals, traveled to Tennessee to meet with [Worldwide] to discuss a joint development opportunity...." Worldwide Mem. at 1.

- On about "September 13, 2006, [Chmura] forwarded to [Worldwide] in Tennessee a partially executed Joint Development Agreement relating to JobsEQ.... [Worldwide] execut[ed]...the Agreement." Worldwide Mem. at 2.

- "[Chmura] developed and maintained JobsEQ, and [Worldwide] used and promoted JobsEQ." Worldwide Mem. at 2.

Chmura disputes these allegations; however, even if they are taken at face value, entry into the contract between Chmura and Worldwide has nothing to do with, and is completely unrelated to, the pending patent litigation between the parties. These allegations relate to a commercial transaction between Worldwide and Chmura. Also, Worldwide makes no allegation here that Chmura developed the software in Tennessee. None of Worldwide's allegations relate to the "enforcement or defense" of a patent, and therefore they cannot give rise to specific personal jurisdiction in a patent case.

### B. Performance of a Contract Involving Patented Technology Does Not Relate to "Enforcement or Defense" of a Patent.

Worldwide continues its allegations:

- "[Chmura] alleges that it is the owner" of the Chmura Patent and that "certain" of the "underlying technology" of JobsEQ is protected by the Chmura Patent. Worldwide Mem. at 2.

- Chmura sent invoices to Tennessee related to the contract. Worldwide paid these invoices. Worldwide Mem. at 2.

- On about February 15, 2008, Chmura "hosted and conducted a training session relating to JobsEQ" in Tennessee in accordance with its performance under the contract. Worldwide Mem. at 3.

- On about February 15, 2008, Chmura "forwarded to [Worldwide] in Tennessee a partially executed Retainer Agreement..." to provide "ongoing and continuing services" to Worldwide, which required Chmura to access Worldwide's servers in Tennessee. Worldwide Mem. at 3.

- On about October 22, 2008, Chmura conducted a second training session "relating to JobsEQ" in Tennessee in accordance with its performance under the contract. Worldwide Mem. at 3.

As stated in *Autogenomics*, "only enforcement or defense efforts related to the patent rather than the patentee's own commercialization efforts are to be considered for establishing specific personal jurisdiction in a declaratory judgment action against the patentee." *Autogenomics* at 19. Ownership of the Chmura Patent is evident plainly from the face of the

patent, and has nothing to do with Tennessee. *See*, U.S. Pat. No. 7,480,659. Tellingly, Worldwide does not identify what portions of JobsEQ are protected by the Chmura Patent, or why this alleged fact would be relevant to its cause of action. Regardless, though, "[w]hat the patentee makes, uses, offers to sell, sells, or imports of no real relevance to the enforcement or defense of a patent...." *Avocent* at 1335 (citations omitted). Chmura is not amenable to personal jurisdiction for a declaratory judgment action regarding a patent merely because it entered into and performed a contract with Worldwide regarding a patented technology.

### C. Attempts to Resolve What Became the State Court Lawsuit Do Not Relate to "Enforcement or Defense" of a Patent.

Taking Worldwide's allegations as true, Worldwide continues:

- The relationship between Worldwide and Chmura began to deteriorate. Worldwide hired a lawyer, and Chmura's lawyer told him Chmura was concerned that Worldwide was "reverse engineering" and "claiming ownership" in Chmura's intellectual property in a way that "possibly infringed," and if Worldwide unduly delayed the drafting the settlement agreement then Chmura would "need to explore other means of resolving its concerns." Brock Aff. ¶ 7. Worldwide Mem. at 3-4.

- Worldwide's Strategic Policy Advisor, Katherine DeRosear, attended a conference in Washington, D.C. and prior to giving a presentation, she overheard Dr. Chmura say to a third party that the presentation would generate a need for Worldwide "having a trial attorney." Worldwide Mem. at 4.

- A consultant for Worldwide, Dr. Tim Alford, also attended the D.C. conference, where Dr. Chmura and a Chmura employee allegedly "cautioned" him and expressed "intent to initiate legal action...to enforce the...patent...." Chasteen Aff. ¶ 17. Worldwide Mem. at 5.

- A labor lawyer representing Chmura sent a letter to Worldwide's independent consultant, Dr. Mangum, advising him that his work will be scrutinized for infringement and Chmura will take legal action "as a result of such infringement." Chasteen Aff. ¶ 18. Worldwide Mem. at 5.

- Worldwide began to market software on about March 19, 2009. Worldwide Mem. at 5.

16

As stated above, Worldwide does little to help its position here. Worldwide does not provide an affidavit of its consultants, Drs. Alford and Mangum, but instead submits an affidavit of its owner, Dr. Chasteen. Her affidavit is tainted with remarkably extended chains of hearsay as well as her personal speculations regarding the substance of the alleged communications. Chmura therefore has respectfully requested that the Court disregard paragraphs 17 and 18 of Dr. Chasteen's affidavit, as well as the arguments in the Worldwide Memorandum based on these paragraphs. Chmura also renews its objection to the admissibility of Mr. Brock's affidavit in view of Fed. R. Evid. 408.

Worldwide derives little, if any, benefit, even if these facts are taken as true. There is no contention that the parties had a disagreement regarding the performance of a contract. Attorneys from both sides have been involved in attempting to resolve that matter. Worldwide decided to initiate legal action in the State Court Lawsuit, thus indicating that Dr. Chmura's statement at the conference was accurate: Worldwide did in fact have need for a trial attorney—but for a state court matter, not patent litigation. In addition, Katherine DeRosear's affidavit makes clear that Dr. Chmura's comment was not a threat directed toward Worldwide. The comment was made, if at all, to an unrelated third party.

Here, Worldwide has, at most, claims that Chmura has made unspecified allegations of some sort of unspecific "infringement," and has directed those allegations to Washington D.C., an independent consultant living in Richmond, Virginia (Chmura Counter Decl. ¶ 4), and to Worldwide's attorney in an unspecified locale. Even if Worldwide could submit to this Court (which it has not attempted) the strongest possible evidence of an allegation of patent infringement—namely, **written** allegations of **patent** infringement directed to Tennessee—even those would **not** be adequate to give rise to specific personal jurisdiction. Specifically:

letters threatening suit for patent infringement sent to the alleged infringer by themselves *do not* suffice to create personal jurisdiction. This is because to exercise jurisdiction in such a situation would not comport with fair play and substantial justice.

*Avocent* at 1333 (emphasis added) (internal citations and quotation omitted). Further, "[a] patentee should not subject himself to personal jurisdiction in a forum solely by informing a party who happens to be located there of suspected infringement." *Avocent* at 1333.

### III. CONCLUSION

The dispute between the parties on state law claims does not automatically generate subject matter jurisdiction for a patent lawsuit in this Court, or for personal jurisdiction over Chmura in this patent lawsuit. None of Worldwide's contentions, alone or in combination, identifies a controversy between the parties *pertaining to the enforcement or defense of a patent* or to the conduct of Chmura that would cause it to anticipate being haled into court in Tennessee *regarding a patent*. Because there is no "substantial controversy" between the parties "of sufficient immediacy and reality" pertaining to the subject of the litigation before this Court, namely, *patent litigation*, therefore subject matter jurisdiction is not present here. For this reason alone, Worldwide's Complaint before this Court should be dismissed. In addition, Worldwide's Complaint should be dismissed for lack of personal jurisdiction. Chmura has had only limited and sporadic contacts with Tennessee, and none of those contacts gave rise to Worldwide's claims in this patent action. Therefore, the Court should also dismiss Worldwide's Complaint for lack of personal jurisdiction.

18
636254.1
Case 3:09-cv-00121-TWP-HBG   Document 15   Filed 06/25/09   Page 18 of 20   PageID #: 313

Respectfully submitted this 25th day of June, 2009.

                        WOOLF, MCCLANE, BRIGHT,
                        ALLEN & CARPENTER, PLLC

                        By: /s/ Robert L. Vance
                        Robert L. Vance (BPR #021733)

                        900 Riverview Tower
                        900 S. Gay Street
                        Knoxville, Tennessee 37902
                        865-215-1000 (telephone)
                        865-215-1001 (fax)

                        *Attorney for Defendant Chmura Economics &*
                        *Analytics, LLC*

## CERTIFICATE OF SERVICE

    I hereby certify that on June 25, 2009, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. mail. Parties may access this filing through the Court's electronic filing system.

                                  s/Robert L. Vance
                                  Robert L. Vance, Esq., (BPR #021733)

                                  WOOLF, McCLANE, BRIGHT,
                                    ALLEN & CARPENTER, PLLC
                                  Post Office Box 900
                                  Knoxville, Tennessee 37901-0900
                                  (865) 215-1000